IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN LOGAN,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    Civ. No. 15-499 |
| | ) |
| BD. OF EDUC. OF SCH. DIST.<br>OF PITTSBURGH, *et al.*,<br>    Defendants. | )<br>)<br>) |

CONTI, Chief District Judge.

## OPINION

### I. INTRODUCTION

Shawn Logan ("Logan") filed a motion for summary judgment (ECF No. 56) on liability with respect to his 42 U.S.C. § 1983 claim against Robert Lellock ("Lellock"). Lellock (proceeding *pro se*) responded to the motion (ECF No. 72), which is ripe for disposition. Because Lellock is collaterally estopped from denying his prior criminal acts against Logan, the court will grant Logan's summary judgment motion.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Logan, in the summer of 1998, rode his bike to the Arthur J. Rooney Middle School (the "school"), where he would soon begin sixth grade. (ECF No. 58 ¶ 2). At the school, he saw Lellock, who was a City of Pittsburgh Public Schools police officer at that time. (*Id.*). Lellock gave Logan a tour of the school. (*Id.*).

---

[1] The factual background is primarily taken from the concise statement of material facts (ECF No. 58) filed by Logan. Typically, facts are construed in the light most favorable to the nonmoving party for summary judgment purposes. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Though Logan moved for summary judgment, Lellock is collaterally estopped from denying the acts he performed on Logan that underlie his criminal convictions in the Allegheny County Court of Common Pleas. *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996); (ECF No. 58-1 at 2–6).

As the tour progressed, Lellock noticed a blue stain on Logan's pants. (*Id.* ¶ 3). Lellock asked Logan to reveal any items in his pants' pockets. (*Id.*). Logan pulled multiple debit or credit cards from his pockets. (ECF No. 58-3 at 51–53). Lellock accused Logan of stealing the cards, but decided to "cut him a break and not take him to jail." (ECF No. 58 ¶ 3). On their way out of the school, Lellock grabbed Logan's penis and threatened to rip it off if Logan told anyone what he did to him. (ECF No. 58-3 at 53).

Logan began his sixth-grade school year. (ECF No. 58 ¶¶ 2, 5). Lellock removed Logan from his classroom and took him to a locked janitor's room. (*Id.* ¶¶ 5–6). After entering the janitor's room, Lellock allegedly squeezed Logan's nipples while wearing his police uniform and badge, although other evidence indicates that no sexually-inappropriate contact occurred the first time Lellock took him to the janitor's room. (ECF Nos. 58 ¶ 6; 72 at 2–3). On later occasions, Lellock pinched Logan's nipples and asked that Logan say he was Lellock's "prison bitch." (ECF Nos. 58 ¶ 7; 58-3 at 63–64).

Lellock's physical contact with Logan in the janitor's room escalated. Lellock: stuck his penis in Logan's mouth; masturbated Logan; had Logan masturbate him; made Logan masturbate himself as he stood behind Logan, and made Logan kiss his penis. (ECF No. 58 ¶ 9). Lellock pulled Logan from his classrooms twenty to thirty times during his sixth-grade year. (*Id.* ¶ 8). These occasions lasted up to an hour. (*Id.*).

It was not until Logan was an adult that he alerted the City of Pittsburgh Public Schools Police Department about Lellock's sexual abuse of him in the sixth grade. (ECF No. 10 ¶ 38). At the time he reported Lellock to the authorities, Logan was twenty-nine years old, still young enough to press charges on a claim for sexual abuse that occurred to him as a minor under 42 PA. CONS. STAT. § 5533(b)(2). (ECF No. 1 ¶ 3). An investigation of Lellock followed. (ECF

2

No. 10 ¶ 38). After standing trial in 2013, Lellock was convicted of crimes against Logan, including involuntary-deviate-sexual intercourse, endangering the welfare of children, corruption of minors, indecent assault, and criminal solicitation in the Court of Common Pleas of Allegheny County. (ECF No. 58-1 at 2–6).

On April 15, 2015, Logan sued Lellock under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment's Due Process Clause. (ECF No. 1 ¶ 1). On May 5, 2016, after multiple rounds of motion practice irrelevant to this matter, Logan submitted a motion for summary judgment on liability against Lellock. (ECF No. 56). Also on that day, Logan provided the court with a brief in support of his motion (ECF No. 57) and a concise statement of material facts (ECF No. 58) with exhibits attached. On June 20, 2016, Lellock responded to Logan's materials by filing a hybrid responsive concise statement of facts with exhibits attached and opposition brief. (ECF No. 72). Lellock denied all of Logan's allegations that Lellock sexually assaulted him despite Lellock's criminal convictions for the same conduct. (*Id.* ¶¶ 4–10).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all reasonable inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated only if there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In determining whether a dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* at 249.

## IV. DISCUSSION

### A. Collateral Estoppel

Lellock is collaterally estopped from denying his past criminal acts in this civil case. In other words, Lellock cannot create a genuine issue of material fact for trial by trying to contradict the factual allegations about his criminal conduct. "The doctrine of issue preclusion [or collateral estoppel][] . . . ensures that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to a prior action.'" *Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Before determining whether Lellock is collaterally estopped from denying his past criminal acts in this civil case, the court must decide whether Pennsylvania law or federal common law on collateral estoppel applies. In analyzing this issue, the Supreme Court held that

> though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.

*Allen v. McCurry*, 449 U.S. 90, 96 (1980); 28 U.S.C. § 1738 ("[Judicial] proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . ."). The Third Circuit Court of Appeals adds that federal courts, "in determining the collateral estoppel effect of a state court proceeding, [1] should apply the law of the state where the criminal proceeding took place and [2] also ascertain whether the party against whom the estoppel is asserted had a full and fair

opportunity to litigate the issue." *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986).

1. **Pennsylvania Law**

Since Lellock was convicted in Pennsylvania state court (ECF No. 58-1 at 2–6), this court will apply Pennsylvania law to determine whether Lellock is collaterally estopped from denying his prior acts in this case. Under Pennsylvania law, a party is collaterally estopped if:

> [1] the issue decided in the prior adjudication [is] identical with the one presented in the later action, [2] there was a final judgment on the merits, [3] the party against whom [collateral estoppel] . . . is asserted was a party or in privity with a party to the prior adjudication, and [4] the party against whom [collateral estoppel] . . . is asserted has had a full and fair opportunity to litigate the issue in question in the prior adjudication.

*In re Iulo*, 766 A.2d 335, 337 (Pa. 2001).

Logan meets the first collateral estoppel element: identity of issues. *Id.* Lellock was convicted in state court in 2013 of crimes where the victim was Logan. The crimes included involuntary-deviate-sexual intercourse, endangering the welfare of children, corruption of minors, indecent assault, and criminal solicitation. (ECF No. 58-1 at pp. 2–6). His convictions satisfy the first element of collateral estoppel because Lellock's liability under § 1983 in this lawsuit rests on the same issues decided in the Court of Common Pleas of Allegheny County: that Lellock sexually abused Logan when Logan was a minor. (*Id.*). Lellock tries to deny sexually abusing Logan in this action by parsing the record for immaterial fact disputes. In doing so, he disputed certain of Logan's factual averments. For instance, Lellock denied that he inappropriately touched Logan the first time they were in the janitor's closet. (ECF Nos. 58 ¶ 6; 72 at 2–3). Even if this is true, it does not preclude summary judgment because Lellock was convicted for his subsequent incidents in the janitor's closet with Logan. (ECF Nos. 58 ¶¶ 7–9; 58-1 at 2–6). Lellock attacked Logan's concise statement of material facts for citing the wrong

5

page range indicating the number of times Lellock took Logan to the janitor's closet. (ECF No. 72 at 3). An improper citation does not create a genuine issue of material fact. Logan's trial testimony of the estimated number of times Lellock inappropriately touched him in the janitor's closet is in the record. (ECF No. 58-3 at 67–68). Lellock additionally denied that he slipped a business card with his name and telephone number and a note that said "call me" into Logan's coat pocket at a hearing. (ECF No. 72 at 4). Lellock is correct that the record does not reflect this allegation; the business card contained only his name and number. (ECF No. 58-3 at 72). Even so, it is not a material fact whether Lellock wrote the words "call me" on the business card he slipped into Logan's coat pocket since Lellock's sex crimes toward Logan are undisputed. (ECF Nos. 58 ¶¶ 7–9; 58-1 at 2–6). Finally, Lellock claimed that Logan was thirteen years old at the time Lellock sexually assaulted him instead of twelve years old, as cited in Logan's brief in support of summary judgment. (ECF Nos. 72 at 5; 57 at 1). Logan being thirteen rather than twelve years old does not change the fact that Lellock sexually assaulted Logan when he was a minor. Lellock's factual denials are immaterial and do not change the adjudicated facts that Lellock sexually assaulted Logan when Logan was a minor.

The second element of collateral estoppel applies because "there was a final judgment on the merits" in Lellock's prior state criminal case. *In re Iulo*, 766 A.2d at 337. In Pennsylvania, "[i]t is well established that a criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial." *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996). In *Shaffer*, despite the appellant filing a Post Conviction Relief Act ("PCRA") petition, his "prior criminal conviction, which had been affirmed by the Superior Court and denied review by . . . [the Pennsylvania Supreme Court], was final for purposes of collateral estoppel." *Id.* at 873. Even "the pendency of an appeal of a criminal conviction does not deprive a party of the right to

invoke collateral estoppel in a civil proceeding unless or until that conviction is reversed on appeal." *Id.* at 875. Here, Lellock was convicted of crimes in the Court of Common Pleas of Allegheny County for sexually abusing Logan when Logan was a minor. (ECF Nos. 58-1 at 2–6). His convictions are final because, on appeal, the Superior Court of Pennsylvania only vacated aspects of his sentencing. *Commonwealth v. Lellock*, No. 2021 WDA 2013, 2015 WL 7289527 (Pa. Super. Ct. Apr. 23, 2015), *appeal denied*, 124 A.3d 309 (Pa. 2015). Under *Shaffer*, Logan may collaterally estop Lellock from denying the criminal acts he was convicted of in a subsequent civil case "unless or until that conviction is reversed on appeal." Therefore, Lellock's convictions are final and element two of collateral estoppel under Pennsylvania law is satisfied. *In re Iulo*, 766 A.2d at 337.

Logan easily proves elements three and four of collateral estoppel. Element three requires that the party being collaterally estopped "was a party or in privity with a party to the prior adjudication." *Id.* Lellock, who Logan is attempting to collaterally estop, was convicted of sexually abusing Logan in 2013. (ECF Nos. 58-1 at 2–6). The fourth collateral estoppel element mandates that the party being collaterally estopped "had a full and fair opportunity to litigate the issue in question in the prior adjudication." *In re Iulo*, 766 A.2d at 337. Lellock had a full and fair opportunity to litigate his prior criminal case in Pennsylvania state court; he had a trial, was represented by counsel, and was able to litigate his case in a manner typically featured in a court of record. (ECF No. 58-3 at 2); *Rue v. K-Mart Corp.*, 713 A.2d 82, 85–86 (Pa. 1998) (holding that a full and fair opportunity to litigate includes: the rights to counsel, to present evidence, to subpoena and cross-examine witnesses, applicability of the Rules of Evidence, and procedure for pretrial discovery).

2. **Full and Fair Opportunity to Litigate**

As discussed above, under Pennsylvania law, Lellock received a full and fair opportunity to litigate in the Pennsylvania state court criminal action against him. Under federal law, "[a] party has been denied a full and fair opportunity to litigate only when state procedures fall below the minimum requirements of due process as defined by federal law." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1074 (3d Cir. 1990). Elements of due process include:

> (1) notice of the basis of the governmental action; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result.

*Rogin v. Bensalem Twp.*, 616 F.2d 680, 694 (3d Cir. 1980).

Here, Lellock received a jury trial in Pennsylvania state court on the criminal charges against him. (ECF No. 58-3). His trial transcript reveals that he had notice of the government's action, his trial was presided over by a court of common pleas judge, he could make an oral presentation, trial procedures provided him a means to present evidence, he could cross-examine witnesses, he had counsel defending him, and the jury rendered a verdict against him. (*Id.*; ECF No. 58-1). Lellock did not allege that any aspects of his criminal jury trial fell below "the minimum requirements of due process as defined by federal law." *Bradley*, 913 F.2d at 1074. Therefore, the state court criminal action against Lellock satisfied federal law by providing him a full and fair opportunity to litigate.

Lellock is collaterally estopped from denying the acts underlying his convictions in 2013 for involuntary-deviate-sexual intercourse, endangering the welfare of children, corruption of minors, indecent assault, and criminal solicitation. (ECF No. 58-1 at 2–6).

**B.     42 U.S.C. § 1983 Claim**

Logan seeks summary judgment on liability in his 42 U.S.C. § 1983 claim against Lellock. Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 is not a source of substantive rights, but provides a remedy against state officials for violations of constitutional rights." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998). "The initial inquiry in a section 1983 suit is (1) whether the conduct complained of was committed by a person acting under color of state law and (2) whether the conduct deprived the complainant of rights secured under the Constitution or federal law." *Id.* Lellock acted under color of state law because he was a police officer for the City of Pittsburgh Public Schools at the time he sexually assaulted Logan. (ECF Nos. 58 ¶ 2; 72 ¶ 2).

Logan asserts that Lellock's sexual assaults of him violated his substantive due process rights under the Fourteenth Amendment. (ECF No. 57 at 4). Logan must show two elements to prevail on his substantive due process claim. He "must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). No reasonable jury could find for Lellock on this claim. Logan proved both elements as a matter of law.

1. **Protected Interest**

It is a protected interest under the Fourteenth Amendment's Due Process Clause that state employees not sexually assault the individuals they serve. An individual's right to bodily integrity is a fundamental right and liberty interest protected by substantive due process. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Third Circuit Court of Appeals agrees. *Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 709, n.1 (3d Cir. 1993) (plaintiffs alleging school bus driver sexually molested them have a liberty interest in their bodily integrity under the Fourteenth Amendment). This district court held that students' right to bodily integrity includes their "'right to be free from sexual assaults' perpetrated by a public school teacher." *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 350 (W.D. Pa. 2011) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989)). Other courts reached similar holdings. The Fourth Circuit Court of Appeals concluded that the rape of a citizen by a police officer violated the Fourteenth Amendment's substantive due process right to bodily integrity, *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997), and the Fifth Circuit Court of Appeals held that "the Constitution protects a schoolchild from physical sexual abuse . . . by a public school teacher." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994). With this backdrop of decisions considered, there is no doubt that the Fourteenth Amendment's Due Process Clause protects schoolchildren from sexual assault by school district police officers.

2. **Shock the Conscience**

Lellock's sexual assaults of Logan shock the conscience. The Supreme Court, regarding acts that "shock the conscience," stated that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). No government interest justified Lellock's actions toward Logan. The facts indicate that, while Lellock wore his police uniform (ECF No. 58 ¶¶ 2, 6), Lellock: grabbed Logan's penis;

10

threatened to rip off Logan's penis if Logan told anyone what he did to him; pinched Logan's nipples; called Logan his "prison bitch"; stuck his penis in Logan's mouth; masturbated Logan; made Logan masturbate him; stood behind Logan after making Logan masturbate himself; and had Logan kiss his penis. (*Id.* ¶¶ 4, 6–7, 9). Lellock sexually assaulted Logan in this manner twenty to thirty times in a janitor's room in the school. (*Id.* ¶¶ 2, 8). These incidents lasted up to an hour. (*Id.* ¶ 8). Lellock's physical acts toward a minor—Logan—"shock the conscience."

Perhaps most conscience shocking is Lellock shrouding himself in the aura of a police officer, a protector, a purveyor of law and order, as he sexually assaulted Logan. (*Id.* ¶¶ 2, 6). Lellock's abuse of his position as a police officer to take sexual advantage of a child shocks the conscience.

Lellock's criminal acts against Logan, which Lellock is collaterally estopped from challenging, show as a matter of law that Logan's rights to bodily integrity and to be free from sexual assault by a police officer were violated. These rights are "protected by the substantive due process clause and the government's deprivation of th[ose] protected interest[s] shocks the conscience." *Chainey*, 523 F.3d at 219. Logan established his substantive due process claim as a matter of law and the motion for summary judgment on liability must be granted.

### C. No Right to Counsel in Civil Cases

Lellock's allegation that his due process rights were violated in this case because he lacks appointed civil counsel is meritless. (ECF No. 72 at 10–11). "The Supreme Court has not recognized nor has the [Third Circuit] [C]ourt of [A]ppeals found a constitutional right to counsel for civil litigants." *Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997). "Civil litigants do not even have a statutory right to appointed counsel." *Id.* at 457. However, 28 U.S.C. § 1915(e)(1) provides district courts with the discretion to "request an attorney to represent any person unable to employ counsel." *Id.*; 28 U.S.C. § 1915(e)(1). Lellock did not

move for this court to request counsel to represent him in this matter. (*See* ECF docket entries). Even if he did, the court would have denied his request because, in determining whether to request an attorney to represent an indigent litigant, the court must consider first the factual and legal merits of the litigant's case. *Parham*, 126 F.3d at 457. Lellock as a practical matter has no defense to Logan's liability claim because Lellock is collaterally estopped from denying the criminal acts he performed on Logan. *See supra* Part IV.A. Thus, even as a nonmoving party in a summary judgment motion, Lellock cannot show a genuine issue of material fact for trial. *See supra* Part IV.B. Because the merits of Lellock's defense are nonexistent, if Lellock had motioned for the court to seek a lawyer to represent him pro bono in this case, the court would have denied his request.

Lellock's *pro se* status does not change the court's conclusions. Lellock stated that: "[t]he issues involved in this case are . . . complex," the prison law library is "inadequate," and he has no "knowledge, understanding, and wisdom in the [a]rts and [s]ciences of [c]ivil [l]aw." (ECF No. 72 at 11). He declared "that he cannot present facts that are essential to justify the opposition" to Logan's motion for summary judgment. (*Id.*). Courts do provide some leniency to *pro se* litigants when applying procedural rules. *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 244 (3d Cir. 2013). But *pro se* litigants must adhere to procedural rules as would parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Here Lellock cannot produce evidence showing genuine issues of material fact to preclude summary judgment on liability because he is collaterally estopped from doing so. The court must grant summary judgment on liability in favor of Logan.

## V. CONCLUSION

For the reasons set forth above, Logan's motion for summary judgment (ECF No. 56) with respect to Lellock's liability will be granted. An appropriate order will be entered.


Dated: December 14, 2016                     /s/ Joy Flowers Conti
                                             JOY FLOWERS CONTI
                                             United States Chief District Judge


All Counsel of Record: